# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FRANCES PARHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-09-433-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Frances Parham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born May 26, 1962, and was forty-six years old at the time of the administrative hearing. She graduated high school, completed vocational training for child development (Tr. 109, 129) and has worked as a daycare worker (Tr. 36). The claimant alleges that she has been unable to work since January 1, 2003, due to fibromyalgia and a sleeping disorder (Tr. 124).

**Procedural History**

On January 26, 2007, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 8). Her application was denied. ALJ Deborah Rose held an administrative hearing and determined the claimant was not disabled in a written opinion dated April 22, 2009 (Tr. 5-15). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b) (Tr. 11). The ALJ concluded that, although the claimant could not return to her past relevant work, she was nevertheless not

disabled because there was other work she could perform in the regional and national economies, *e. g.*, office mail clerk, laundry presser, sorter, maid (Tr. 22-23).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate her credibility; and, (ii) by failing to classify her mental impairments as severe. As part of her first contention, the claimant argues that the ALJ improperly discounted fibromyalgia complaints, and improperly assessed her credibility based on her past relevant work and her failure to lose weight. The Court finds the claimant's first contention persuasive for the following reasons.

The record reveals that the claimant had severe impairments of fibromyalgia, idiopathic hypersomnolence, and obesity (Tr. 10). As relevant, the claimant testified at the administrative hearing that she was diagnosed with fibromyalgia in 2001, which causes her pain, weakness, and muscle spasms. Further, her sleeping disorder causes her to sleep approximately sixteen hours every day (Tr. 22-23; 28). She stated that constant pain and weakness affect her arms and shoulders the most, but varies in intensity based on her activity levels; her hips and knees also hurt daily, but not as much; she occasionally struggles to pick up small items, and has decreased grip strength in her hands; and she has muscle spasms in her calves and thighs two to three times a week (Tr. 24-27). She testified that she has difficulty concentrating, and is easily distracted; that she has difficulty sitting for longer than twenty minutes, because her back hurts; that she can walk about a city block; and that she can lift about eight pounds (Tr. 32-33). Her daily activities consist of making breakfast, taking a nap, watching television, and

occasionally folding laundry, but her daughter cleans the house and cooks meals, and family members occasionally have to help her with personal care (Tr. 34).

The relevant medical evidence revealed the following. Consultative examiner Dr. David Weigman, M.D., examined the claimant on April 28, 2007. During the physical examination, Dr. Weigman found that the claimant's arm, leg, and grip strength were normal, but that she had an "overall mild weakness"; that she had a normal range of motion and a steady gate; and that she had eleven out of eighteen positive tender points for fibromyalgia. Dr. Weigman's impressions were that claimant's fibromyalgia caused her pain and fatigue, as well as difficulty walking, standing, and lifting; that claimant's sleeping disorder possibly caused her to be "deconditioned" upon examination and produced an overall mild weakness; and that claimant's depression had persisted for many years, and possibly contributed to her sleeping disorder and fibromyalgia (Tr. 240-41). Claimant's treating physician, Dr. Don Schumpert, saw the claimant throughout 2007 and 2008 for all of her ailments, including her obesity. Although his treatment notes are largely illegible, he indicated abnormal muscle reflexes on numerous, though not all, occasions (Tr. 248-50, 300-09). Dr. Patrick Martin largely treated the claimant from December 2008 through February 2009 for her depression, but also prescribed medication for her fibromyalgia (Tr. 310-15).

The ALJ summarized the claimant's testimony and found it was not completely credible. He failed to assign any significance to her subjective complaints of pain and weakness due to her fibromyalgia, and relied upon a lack of significant work history to find her not credible (Tr. 13). The ALJ referred to the findings of Drs. Weigman and

-- 5 --

Martin, but not Dr. Schumpert, and determined "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they [were] inconsistent with the above residual functional capacity assessment" (Tr. 13).

Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4. The ALJ's credibility determination fell below these standards.

First, the ALJ apparently rejected the claimant's complaints of pain based solely on a lack of objective support in the record. But symptoms of fibromyalgia are "entirely subjective." *See*, *e. g.*, *Moore v. Barnhart*, 114 Fed. Appx. 983, 991-92 (10th Cir. 2004), *citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or

severity of fibromyalgia."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement."); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [the claimant's] fibromyalgia.") [citation omitted]. Thus, the lack of significant restrictions in the claimant's gate and range of motion, for example, does not necessarily mean that her fibromyalgia and the pain it causes her are not disabling.

Second, the ALJ determined at step two of the sequential analysis that the claimant's fibromyalgia was a severe impairment, *i. e.*, having more than a minimal effect on her basic work activities. Such a finding at step two "makes it impossible to conclude at step four that her pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) [unpublished opinion]; *see also Duncan*, 1998 WL 544353, at *2 ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). Thus, "[o]n remand, [the ALJ] must assess the level of pain [the claimant] suffers, and determine whether there are jobs she can do with that level of pain." *Baker*, 84 Fed. Appx. at 13-14, *citing Thompson*, 987 F.2d at 1490.

Last, Soc. Sec. Rul. 02-1p states that, "People with extreme obesity, even with treatment, will generally continue to have obesity. Despite short-term progress, most treatments for obesity do not have a high success rate." Soc. Sec. Rul. 02-1p, 2000 WL

628049 at *9 (Soc. Sec. 2000). Here, aside from basic notations as to the client's obesity, the record is devoid of any indication that claimant's treating physician prescribed a treatment for her obesity that was expected to restore her ability to engage in substantial gainful activity; thus, the ALJ erred in blaming the claimant for her failure to lose weight. *See id.* 2000 WL 628049 at *9-10 (as to obesity, a claimant has failed to follow prescribed treatment when 1) the claimant has a defined disability, 2) the "treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity," *and* 3) "[t]he evidence shows that the individual has failed to follow prescribed treatment without a good reason"); *see also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC.") [unpublished opinion], *citing* Soc. Sec. Rul. 02-01p, 2000 WL 628049 at *1, 5-7, 7.

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility and the effect of her obesity on her other impairments. If such analysis causes adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the ruling of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings as set forth above.

**DATED** this 30th day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma